IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDALL NEYMAN and REBECCA HOCHSTETLER,

      *Plaintiffs*,

v.

SUNBELT RENTALS, INC.,

      *Defendant*.

Civil Action No. 2:23-cv-226

Hon. William S. Stickman IV

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiffs Randall Neyman ("Neyman") and his wife Rebecca Hochstetler ("Hochstetler")[1] (collectively "Plaintiffs") brought an action against Defendant Sunbelt Rentals, Inc. ("Sunbelt") to recover for injuries that Neyman received when he slipped and fell on a wet and muddy ramp while unloading a forklift from a tractor-trailer. Sunbelt filed a motion for summary judgment (ECF No. 20) ("Motion") and supporting brief (ECF No. 22) arguing that it had no duty to Neyman because he knew of the dangerous conditions on the ramp, yet voluntarily traversed it. Briefing is complete on the motion, and, for the following reasons, the Court will deny Sunbelt's Motion.

### I.    FACTUAL BACKGROUND

    On January 3, 2023, Neyman drove a tractor-trailer to Sunbelt's facility to deliver a forklift. (ECF. No. 21, p. 1); (ECF No. 27, p. 1). Sunbelt had a ramp made of wood and metal that was used to load and unload heavy equipment from trucks. (*Id.*). It is undisputed that

---

[1] Hochstetler asserts only a claim for loss of consortium.

1

Neyman helped to unload the forklift which required him to traverse the ramp multiple times. The parties dispute whether doing so was a requirement of Neyman's job. Neyman contends that, as the driver, it was expected that he would help to unload the forklift. (ECF No. 27, p. 1 ("Plaintiffs contend that Defendant does request and require third-party haulers like Plaintiff to assist in the unloading process.")). Sunbelt's district safety manager testified that the drivers "are responsible to at least unsecure the load." (*Id.* at 2). Moreover, he testified that the drivers "are supposed to be involved in the unloading of pieces of equipment." (*Id.*). Neyman testified that he was told by Sunbelt employees that it was "the driver's responsibility" to help unload the forklift, including the blocks that helped hold it in place. (*Id.* at 3).

Sunbelt, on the other hand, claims that Neyman was not required to help unload the truck. In doing so, it cites to Neyman's testimony where he appears to take the position that he was not required to help, but rather does so of his own volition. (ECF No. 21, p. 2 ("Q. Did anybody from Sunbelt ask you to do that or is that something it sounds like you do on your own? A. Nobody asked me, no. I typically just do it on my own.")).

There is no dispute that the surface of the ramp was covered in a substance that made it slippery. Witnesses testified that the substance was mud, or a drying substance called Oil-Dri, or a combination of the two. (ECF No. 21, p. 3); (ECF No. 27, p. 3). Neyman walked up and down the ramp at least three times. Neyman acknowledged that he knew the ramp was slippery and dangerous. Neyman testified:

> Q. Getting back to the ramp, and I don't want to put words in your mouth, but if I heard you correctly, you're pretty much saying this was a dangerous ramp because it was slippery and had mud on it, right?
>
> A. Yeah.

> Q. And so did you say anything to anybody at Sunbelt saying, "Hey, this is a dangerous ramp" or anything like that?
>
> A. No, sir. No, sir.
>
> Q. And if it was dangerous, why, after you walked up it once and you walked down, why did you go back up if it was dangerous?
>
> A. Well, because I didn't — I mean, I don't know. I did my job. That's what I was doing. I was doing my job so . . . .

(ECF No. 21, p. 5); (ECF No. 27, p. 4).

Ultimately, Neyman slipped while walking on the ramp. (ECF No. 27, p. 8); (ECF No. 28, p. 2). He suffered a severe ankle fracture. (*Id.*).

## II. STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### III.   ANALYSIS

**A.   Genuine issues of material fact preclude the entry of summary judgment.**

Sunbelt argues that it did not owe Neyman a duty because the danger of slipping and falling on the ramp was not only objectively obvious, but actually known to him. Neyman disputes whether the dangerous condition of the ramp was known or obvious, argues that Sunbelt increased the risk of harm by spreading the Oil-Dri, and, even if the dangerous condition was known or obvious, Sunbelt should have anticipated the harm that occurred to Neyman.

Pennsylvania has adopted the Restatement (Second) of Torts § 343 governing the duty of care a landowner owes to a business invitee, like Neyman. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (AM. L. INST. 1965). Pennsylvania courts have also adopted § 343A, which expands upon the impact of a known danger on a plaintiff's ability to maintain a negligence claim. *Cochrane v. Kopko*, 975 A.2d 1203, 1206-07 (Pa. Commw. Ct. 2009). It states, in relevant part:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

RESTATEMENT (SECOND) OF TORTS §343A(1). Under § 343A, "a danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citing RESTATEMENT (SECOND) OF TORTS §343A cmt. b (AM. L. INST. 1965)). For a danger to be "known," it must "not only be known to exist, but . . . also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id*. at 124. Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. *Id.* (citing RESTATEMENT (SECOND) OF TORTS §343A cmts. b and c (AM. L. INST. 1965)).

Many cases addressing a landowner's duty to an invitee under sections 343 and 343A focus on the question of whether the danger was known or obvious to the plaintiff. While, as the Court held in *Carrender*, this is generally a question for the jury, courts have held that judgment as a matter of law is warranted when there is no genuine dispute of fact as to the plaintiff's appreciation of the danger. For example, in *Palenscar v. Glencannon Homes Ass'n, Inc.*, 313 A.3d 470 (Pa. Commw. Ct. 2024),[2] the Commonwealth Court of Pennsylvania affirmed the grant of summary judgment against a plaintiff who fell during a five-kilometer run/walk *the second time* she traversed an exposed pipe on the course. In doing so, the court observed that the "Plaintiff acknowledged the dangerous condition of the open and obvious pipe, including that the

---

[2] The Court recognizes that *Palenscar* was designated as an "opinion not reported," i.e., unpublished decision by the Commonwealth Court. It would not, therefore, be precedential to our coordinate state trial courts, the Pennsylvania courts of common pleas. Nevertheless, the Court believes that it is a persuasive explanation and application of Pennsylvania law with respect to § 343A.

pipe was slippery and wet." *Id.* at 6. The court explained that the pipe was both known and avoidable, yet plaintiff was injured when she "voluntarily traversed it a second time." *Id.* at 7.

Likewise, in *Warnick v. Home Depot U.S.A., Inc.*, 516 F. Supp. 2d 459 (E.D. Pa. 2007), the United States District Court for the Eastern District of Pennsylvania, granted summary judgment where the plaintiff was injured after walking on a wooden plank in the ceiling of a Home Depot store while installing a computer system. In doing so, the court observed that the record was clear that the plaintiff had actual knowledge of the dangerous condition and appreciated the associated risk. *Id.* at 466-67.

In *Robinson v. Seven Springs Mountain Resort, Inc.*, 323 A.3d 202 (Pa. Super. 2024), the Superior Court of Pennsylvania focused on the second clause of § 343A. There, the court reversed the grant of summary judgment in favor of the defendant where the plaintiff was injured after falling in loose gravel while playing a game of disk golf. The court held that the record was not clear as to whether the hazardous area was open and obvious. Importantly, the court explained that "even if the danger was open and obvious, that did not entitle [the defendant] to summary judgment." *Id.* at 5. Indeed, the Superior Court explained: "The Restatement provides that [the defendant] is not relieved of its duty of care for open and obvious dangers when it 'has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.'" *Id.* (RESTATEMENT (SECOND) OF TORTS §343A cmt. f (AM. L. INST. 1965)).[3]

---

[3] In *Robinson*, the Superior Court quoted § 343A comment f at length. It provides:

> f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other

Under § 343A, to determine whether summary judgment is warranted, the Court must undertake a two-point inquiry, examining both clauses of the section. First, the Court must determine whether there are genuine issues of fact as to whether—reading the record in a light most favorable to Neyman—the danger posed by the conditions on the ramp were known or obvious to him. If not, summary judgment must be denied. However, even if the Court finds that there are no disputed material facts and that Neyman appreciated the danger, it must still consider whether Sunbelt should have "anticipate[d] the harm despite such knowledge or obviousness."

> 1) <u>The record is clear and unequivocal that Neyman knew about the dangerous condition on the ramp.</u>

As to the first clause of § 343A, the record is clear that the danger posed by the ramp was "known or obvious" to Neyman. Counsel may contest Neyman's degree of knowledge regarding the condition of the ramp, or his appreciation of the dangers its posed. Nevertheless, Neyman's testimony demonstrates, as in *Panenscar* and *Warnick*, that he possessed actual knowledge of the ramp's dangers from repeatedly walking on it before he fell and incurred injuries.

The parties do not dispute that Neyman "acknowledged that he repeatedly walked up and down the ramp he believed to be dangerous." (ECF No. 21, p. 5); (ECF No. 27, p. 4). In addition to Neyman's testimony that the Court previously discussed, Neyman also testified to his repeated traverse of the muddy and wet ramp:

> Q. Do you recall, as you sit here today, do you remember the ramp?
>
> A. Yes, sir.
>
> Q. Was it wet when you first walked up it?

---

reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

> A. It's muddy and wet, yes.
>
> Q. And this was something you could observe from just looking at it, that it was muddy and wet?
>
> A. Of course, yes, sir.
>
> Q. All right. So as you walked up the ramp the first time, you were aware that you were walking on a wet and muddy surface, correct?
>
> A. Well, yes, sir.
>
> Q. And then when you came down on a number of—on two occasions and went back up, you were aware that it was wet and muddy?
>
> A. Yes sir.

(ECF No. 21-1, p 46). He further testified:

> Q. And is that why you think you fell, because of the wet, slippery and muddy conditions?
>
> A. Yes, sir.
>
> Q. Am I correct that before you slipped you were aware of the conditions of the ramp because you had walked up and down it a couple of times before you actually slipped; is that correct?
>
> A. Yes, sir.

(ECF No. 21-1, p. 52). In light of Neyman's testimony, it is clear that the condition of the ramp was objectively obvious and, more critically, was subjectively known to Neyman. Nevertheless, Neyman chose to repeatedly traverse the ramp despite its known and obvious dangerous condition. As such, there are no genuine issues of material fact with respect to the first clause of § 343A.

8

> 2) <u>There are genuine issues of material fact as to whether Sunbelt should have anticipated the harm to Neyman despite his knowledge of the conditions on the ramp.</u>

Even though the Court holds that Neyman knew of the danger posed by the ramp, the Court must examine the second clause of § 343A – whether Sunbelt should have anticipated the harm to Neyman notwithstanding his knowledge. The Court is guided by § 343A comment f, which states:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

RESTATEMENT (SECOND) OF TORTS §343A cmt. f (AM. L. INST. 1965)

Here, there are a number of facts that could lead a jury to determine that Sunbelt could have anticipated Neyman's harm from the condition of the ramp. It is undisputed the slippery condition was not hidden from Sunbelt. Prior to Neyman's fall, an employee of Sunbelt slipped on the ramp. (ECF No. 27, pp. 3, 5, 6, 8); (ECF No. 28, p. 2). A jury could reasonably determine not only that Sunbelt knew that the ramp was slippery, but that its slippery condition could lead to workers falling.

The parties sharply dispute whether Neyman was required or, at least, expected to undertake any role in unloading the trailer as part of his job responsibilities. Both sides point to evidence in the record that support their contentions that Neyman was required, as he contends, to play some role in unloading the trailer, or, as Sunbelt claims, that he had no role in doing so.

9

This is a critical dispute of fact because it may impact the analysis of Sunbelt's reasonable anticipation of the potential for injury to Neyman, notwithstanding his knowledge of the dangerous conditions on the ramp. On this point, § 343A comment f states: "Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." RESTATEMENT (SECOND) OF TORTS §343A cmt. f (AM. L. INST. 1965). The comment includes an illustration on this point:

> A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

RESTATEMENT (SECOND) OF TORTS §343A cmt. f (AM. L. INST. 1965). In this case, if a jury determines that truck drivers like Neyman were required or expected to help unload their trucks, and thus needed to walk on the ramp, it could find that Sunbelt should have known that drivers, like Neyman, would voluntarily traverse dangerous conditions on the ramp. Thus, there is a genuine dispute of material fact as to whether Sunbelt could have anticipated the harm to Neyman. The Court will deny Sunbelt's motion for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, the Court will deny Sunbelt's Motion. It will be up to a jury to determine whether, despite Neyman's knowledge of the dangerous condition on the ramp, Sunbelt should have "anticipat[ed] the harm despite such knowledge or obviousness." An Order of Court will follow.

BY THE COURT:

s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: December 13, 2024